1
2
3
4
5
6
7
8                              **UNITED STATES DISTRICT COURT**

9                              **EASTERN DISTRICT OF CALIFORNIA**

10

11   STANLEY CLARKE,                          )   Case No.: 1:13-cv-00049-LJO-JLT
                                              )
12                Petitioner,                 )   FINDINGS AND RECOMMENDATIONS TO
                                              )   DENY FIRST AMENDED PETITION FOR WRIT
13         v.                                 )   OF HABEAS CORPUS (Doc. 25)
                                              )
14   STATE OF CALIFORNIA, et al.,             )
                                              )   ORDER DIRECTING THAT OBJECTIONS BE
15                Respondents.                )   FILED WITHIN TWENTY-ONE DAYS
                                              )
16   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

17         In 2010, Petitioner was convicted of two counts or resisting arrest and sentenced to probation.[1]

18   In this action, he asserts the trial judge violated Petitioner's due process rights by failing to disclose her

19   marriage to a retired Madera police officer, there was insufficient evidence to support his conviction

20   and the trial court violated his due process rights when it excluded portions of the defense expert's

21   testimony.  For the reasons set forth below, the Court recommends the petition be **DENIED**.

22   **I.       Procedural History**

23         In 2010, Petitioner was tried and convicted in the Madera County Superior Court for two counts

24   of resisting arrest. (Cal. Pen. Code § 148). (Doc. 1, p. 1).  He appealed the conviction to the Superior

25   Court, Appellate Division affirmed the conviction.  (Doc. 33, Ex. A; Lodged Document ("LD") 3).  The

26   Appellate Division later modified its opinion to include additional legal analysis.  (Doc. 33, Ex. B; LD

27

28   ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
     [1] As a result, he is deemed to be "in custody" of the California Department of Corrections and Rehabilitation.

                                              1

4).

Petitioner then filed a state habeas petition in the California Superior Court, raising the two grounds presented to the Appellate Division and also raising three other grounds.  (LD 7).  That petition was denied.  (LD 9).  Petitioner then filed a habeas petition in the California Court of Appeal, Fifth Appellate District ("5th DCA").  (LD 10).  That petition was denied as well.  (LD 11).  Finally, Petitioner filed a petition for review to exhaust state remedies in the California Supreme Court that was denied.  (LD 12; 13).

In his petition here, Petitioner claims errors related to the failure to the trial judge to disclose her marriage to a retired Madera police officer, the insufficient evidence to support his conviction and the fact that the trial judge excluded some testimony of the defense expert.

## II.    Factual Background

The Court adopts the "Facts" summary in the Superior Court Appellate Division's unpublished decision[2]:

> This case arises out of a traffic stop of driver Andrea Venturi near the intersection of Accornero Street and Sunset Avenue in the City of Madera for failing to stop at a posted stop sign. Appellant does not challenge the legality of the traffic stop.
>
> According to testimony adduced at trial, Officer Felix Gonzalez of the Madera Police Department conducted the traffic stop of Ms. Venturi's car, in which Appellant was a passenger.  As Officer Gonzalez dismounted from his motorcycle, Appellant exited the passenger door.  Gonzalez ordered Appellant to return to the car.  Appellant proclaimed that he did not have to submit to Gonzalez's authority.  Gonzalez asked Appellant to take a seat on the curb; Appellant refused.  Gonzalez then requested backup on his radio.  After Appellant asked for the Officer's badge number, Gonzalez instructed Appellant to move down the street. Appellant complied, and moved approximately 160 feet away.
>
> Shortly thereafter, Officers Cederquist, Harlow and Shecklanian arrived on the scene.  Gonzalez explained the situation to the officers.  Harlow and Shecklanian walked toward the Appellant. According to these officers, Appellant stood in what was described during testimony as a "bladed fighting stance" and remained in what was described as an agitated state.  Appellant consistently refused to follow the officers' instructions.  The officers testified that Appellant squared up to Harlow and stepped up to within on [sic] inch of his face.  Harlow stepped back and then attempted to control Appellant by grabbing Appellant's arm.  Appellant pulled his arm loose and, as he did so, hit Officer Harlow in the chest.  Harlow backed away and ordered Appellant to get on the ground.  Appellant refused.  Harlow use a baton against Appellant twice, and ultimately got Appellant to the ground, where he was placed under arrest.

(Doc. 33, Ex. A).

---

[2]  The Superior Court Appellate Division's summary of the facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1).  Thus, the Court adopts the factual recitations set forth by the Superior Court Appellate Division.

1   **III.    Discussion**

2       **A.    <u>Jurisdiction</u>**

3       Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to

4   the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the

5   United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.

6   7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

7   Constitution.  The challenged conviction arises out of the Madera County Superior Court, which is

8   located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

9       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

10  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

11  <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997);  <u>Jeffries v.</u>

12  <u>Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other*

13  *grounds by* <u>Lindh v. Murphy</u>, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after

14  statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

15  governed by its provisions.

16      **B.    <u>Legal Standard of Review</u>**

17      A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the

18  petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was

19  contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

20  by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an

21  unreasonable determination of the facts in light of the evidence presented in the State court

22  proceeding."  28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003); <u>Williams</u>, 529 U.S.

23  at 412-413.

24      A state court decision is "contrary to" clearly established federal law "if it applies a rule that

25  contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

26  that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

27  <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), citing <u>Williams</u>, 529 U.S. at 405-406 (2000).  In

28  <u>Harrington v. Richter</u>, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an

1  "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

2  fairminded jurists could disagree" that the state court decision meets the standards set forth in the

3  AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law

4  is different from an *incorrect* application of federal law.'" Cullen v. Pinholster, 131 S.Ct. 1388, 1410-

5  1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show

6  that the state court's ruling on the claim being presented in federal court was so lacking in justification

7  that there was an error well understood and comprehended in existing law beyond any possibility of

8  fairminded disagreement."  Harrington, 131 S.Ct. at 787-788.

9      The second prong pertains to state court decisions based on factual findings.  Davis v.

10  Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under § 2254(d)(2), a

11  federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted

12  in a decision that was based on an unreasonable determination of the facts in light of the evidence

13  presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520; Jeffries v. Wood, 114

14  F.3d at 1500.  A state court's factual finding is unreasonable when it is "so clearly incorrect that it

15  would not be debatable among reasonable jurists."  Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001

16  (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

17      To determine whether habeas relief is available under § 2254(d), the federal court looks to the

18  last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker,

19  501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  "[A]lthough we

20  independently review the record, we still defer to the state court's ultimate decisions."  Pirtle v.

21  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  The prejudicial impact of any constitutional error is

22  assessed by asking whether the error had "a substantial and injurious effect or influence in determining

23  the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S.

24  112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized

25  the error and reviewed it for harmlessness).

26  **IV.    Review of Petitioner's Claims**

27      The petition alleges the following as grounds for relief: (1) the trial judge violated Petitioner's

28  due process rights by failing to disclose her marriage to a retired Madera Police Officer; (2)

4

insufficiency of the evidence; and (3) the trial court violated Petitioner's due process rights when it excluded portions of the defense expert's testimony.

A. Failure By Trial Judge To Disclose Marriage

Petitioner first contends that the trial judge violated his due process rights by failing to disclose her marriage to a retired Madera Police Officer. This contention is without merit.

1. The Superior Court Appellate Division's Opinion

The Appellate Division rejected this argument as follows:

> The court has reviewed the entire file in this matter, including the Petitioner filed by post-appeal on January 7, 2013 and the Supplement filed on January 14, 2013. Mr. Clarke alleges that his trial judge, the Hon. Jennifer Detjen, had a "conflict of interest and potential bias" when she tried his case before a jury. He states that she was then married to a "former sergeant with the Madera City Police Department.["] The file indicates that Mr. Clarke was charged and convicted of resisting the arrest of Madera City Police officers. The petitioner states that he just learned of the marriage, that had he known of it prior to trial that he would have asked for recusal, and that the judge did not disclose the marriage or recuse herself.

> He contends that certain of her rulings that were contrary to his wishes resulted from her marriage to a former cop. Those rulings were the subject of his appeal and rejected on their merits by the appellate panel. There is nothing about the new allegations that suggest a contrary result. Nor has a casual relationship between husband's former employment, the officers involved in the arrest, and Mr. Clarke's circumstances been established by the petition. The connection, if any is specious at best.

> He states that the judge should have disclosed her husband's former employment. Such a disclosure, regardless of when her husband last worked for the Madera Police department, would have been appropriate but, without more information in the Petition, cannot be said to be mandatory.

> He argues that the judge was disqualified for cause and, in effect, would have received such a ruling if he had known of the marriage and filed the challenge for cause. There is nothing about his allegations that suggest that such a challenge would have been granted. His allegations are extremely vague. Few material facts are stated. He states that Mr. Detjen was a "former sergeant" but doesn't state when he transitioned from active duty to his "former status"—the day before Mr. Clarke's arrest or decades before? Such information would have been important for the duty to disclose at the very least—a recent retirement, as an example, would go towards requiring disclosure, while a retirement in the distant past would suggest no need to disclose much less recuse.

(LD 9).

2. Federal Standard

"The Due Process Clause entitles a person to an impartial and disinterested tribunal." Marshall v. Jerrico, Inc., 446 U.S. 238, 243, 100 S.Ct. 1610, 64 L.Ed.2d 182 (1980). In addition, "justice must satisfy the appearance of justice." Offutt v. United States, 348 U.S. 11, 14 (1954). As stated by the

United States Supreme Court: A fair trial in a fair tribunal is a basic requirement of due process.

Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has

always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in

his own case and no man is permitted to try cases where he has an interest in the outcome.  In re

Murchison, 349 U.S. 133, 136 (1955). See also Taylor v. Hayes, 418 U.S. 488 (1974). A trial judge

"must be ever mindful of the sensitive role [the court] plays in a jury trial and avoid even the

appearance of advocacy or partiality."  Kennedy v. Los Angeles Police Dep't, 901 F.2d 702, 709 (9th

Cir.1989), overruled on other grounds by Hunter v. Bryant, 502 U.S. 224 (1991) (quoting United States

v. Harris, 501 F.2d 1, 10 (9th Cir.1974)).

To sustain a claim of judicial bias, "there must be an 'extremely high level of interference' by

the trial judge that creates 'a pervasive climate of partiality and unfairness.'" Duckett v. Godinez, 67

F.3d 734, 740 (9th Cir.1995) (quoting United States v. DeLuca, 692 F.2d 1277, 1282 (9th Cir.1982)).

See also In re Murchison, 349 U.S. at 136 (judicial bias resulted in a denial of due process where the

same judge who had sat as the 'grand jury' before which witnesses had testified also presided at a

contempt hearing at which those witnesses were adjudged in contempt for their previous conduct before

the judge); Tumey v. Ohio, 273 U.S. 510, 523 (1927) (violation of due process where judge had a direct

personal pecuniary interest in convicting the defendant who came before him for trial).  However, in

attempting to make out a claim of unconstitutional bias, a plaintiff must "overcome a presumption of

honesty and integrity" on the part of decision-makers. Withrow v. Larkin, 421 U.S. 35, 47 (1975).

Finally, if a criminal defendant is not tried by an impartial adjudicator, the error is structural, i.e.,

reversal is required without consideration of whether the error was harmless. Neder v. United States,

527 U.S. 1, 8 (1999); Gomez v. United States, 490 U.S. 858, 876 (1989) (denial of "right to an

impartial adjudicator, be it judge or jury" can never be harmless error) (citation omitted).

### 3. Analysis

#### a. Untimeliness

As a preliminary matter, Respondent contends that the claim is untimely.  The Court agrees.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal

petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  As amended, § 2244, subdivision (d) reads:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Petitioner was convicted in the Madera County Superior Court in 2010.  (Doc. 1).  After his appeal to the Appellate Division was rejected, his direct state appeal concluded when the Court of Appeal, Fifth Appellate District, denied his request for a discretionary transfer to that court on February 2, 2012.  Cal.R. Ct. 8.1018(a)(discretionary transfer denial order final upon filing); Cal.R.Ct. 8.500(a)(1)(transfer denial not reviewable); see Larche v. Simons, 53 F.3d 1068, 1071-72 (9th Cir. 1995)(misdemeanant "cannot directly appeal to the California Supreme Court").

The one-year limitation period under the AEDPA would have begun on May 2, 2012, the day after the ninety-day period for seeking review in the United States Supreme Court had ended, Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998), and would have expired one year later, on May 1, 2013, absent statutory tolling.

The one-year limitation period continued to run until January 6, 2013, when Petitioner filed his first state habeas petition in the Superior Court.  At that point, 249 days had elapsed of the one-year period, leaving Petitioner with 116 days remaining.  Shortly thereafter, on January 11, 2013, Petitioner filed the original petition in this case, which did not contain the issue regarding the trial judge's marriage to a police officer.

7

1    The limitation period resumed on March 20, 2013, the day following the California Supreme

2    Court's denial of review.  (LD 13).  The limitation period continued to run until the remaining 116 days

3    expired, i.e., on July 13, 2013.

4        As Respondent correctly contends, the limitations period is not tolled for the time a federal

5    habeas corpus application is pending in federal court.  Duncan v. Walker, 533 U.S. 167, 181-182

6    (2001); see Fail v. Hubbard, 272 F.3d 1133, 1135-1136 (9th Cir.2001).  Thus, Petitioner is entitled to

7    no statutory tolling of the limitation period based on the pendency of the original petition in this case.

8    Petitioner filed the first amended petition, containing the instant claim, on December 19, 2013.  (Doc.

9    25).  However, as discussed above, the limitation period expired on July 13, 2013, over five months

10   earlier.  Hence, as discussed below, the claim is untimely unless it "relates back" to a claim in the

11   timely-filed original petition.

12       Under Rule 15(c)(2) of the Federal Rules of Civil Procedure, an amendment of a pleading

13   relates back to the date of the original pleading when "the claim or defense asserted in the amended

14   pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

15   original pleading."  The rule applies in habeas corpus proceedings.  Mayle v. Felix, 545 U.S. 644, 650

16   (2005); Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000).  In Mayle, the United States Supreme

17   Court held that relation back is in order if the claim to be amended into the petition is tied to the

18   original timely petition by "a common core of operative facts."  Mayle, 545 U.S. at 664.  Conversely,

19   the claim *does not* relate back when it asserts a new ground for relief supported by facts that differ in

20   both "time and type" from those the original pleading set forth.  Id. at 650.  The Mayle court expressly

21   rejected the Ninth Circuit's interpretation of the rule that a claim relates back if it arises merely from

22   the same judgment and conviction.  Id. at 656-657.  Thus, relation back is "ordinarily allowed 'when

23   the new claim is based on the same facts as the original pleading and only changes the legal theory.'"

24   Woodward v. Williams, 263 F.3d 1135, 1142 (10th Cir. 2001), quoting 3 J. Moore, et al., Moore's

25   Federal Practice § 15.19[2], pp. 15-82 (3d  ed. 2004).

26       Here, the claim of failure to disclose the trial judge's marriage to a local police officer does not

27   "relate back," either factually or legally, to any other claim in the original petition.  Hence, it is deemed

28   filed as of the date of the first amended petition, which, as mentioned above, was long after the

1    expiration of the one-year limitation period.  Accordingly, the Court agrees with Respondent that the

2    claim is untimely under the AEDPA and must be dismissed.[3]

3                                    b.  Merits.

4            However, even still, the claim fails on its merits.  As the Appellate Division noted, Petitioner's

5    claim alleges simply that the trial judge was married to a former police officer.  The claim does not

6    indicate when the two were married, when the judge's husband left his employment with the police

7    force, nor does it describe the nature of the relationship, if any, between the judge's husband and any of

8    the officers connected to the case.  Likewise, Petitioner does not allege in what specific respects the

9    mere fact of marriage to a former police officer would have affected the trial judge's ability to be an

10   impartial adjudicator.

11           To the contrary, Petitioner appears to assume, without more, that the mere fact of the marriage

12   requires, *ipso facto*, a conclusion that the judge was biased or prejudiced and could not preside over the

13   trial without compromising Petitioner's constitutional rights.[4]  Put another way, while it is true that the

14   absence of an impartial adjudicator is structural error, the necessary condition that must be established

15   in all cases is that the adjudicator *was in fact partial*.  As discussed above, Petitioner's fails to establish

16   this critical and fundamental prerequisite to his claim.  Like the Appellate Division, this Court will not

17   assume that, simply because the trial judge had a relationship with a former police officer, she could not

18   be impartial. Indeed, the law requires the Court to indulge a presumption of "honesty and integrity" on

19   the part of the judge. Withrow v. Larkin, 421 U.S. at 47.  Absent a showing of actual partiality by the

20

21   _____

22   [3] In his Traverse, Petitioner attempts to argue that he had a right to amend the petition to include the new claim, based on
     Fed. R. Civ. Pro. 15, which permits an amendment as a matter of right before a responsive pleading is filed, and because
     the claim "relates back" to the original petition because it involves the same "conduct, transaction, or occurrence."  (Doc.

23   39, p. 13).  Neither argument is persuasive.  While Rule 15 governs amendments generally, the AEDPA imposes its own
     time limitation on raising claims in a federal habeas petition that is independent of Rule 15's own procedural requirements.

24   Thus, although no responsive pleading had been filed at the time the first amended petition was filed, the claim was still
     untimely under the AEDPA because the one-year period had already expired.  As to "relation back," Petitioner is simply
     incorrect.  Although the claim regarding judicial bias involves the same criminal defendant, trial, and charges, it is

25   premised upon a set of specific facts and legal theories that are never raised in any of the claims in the original petition.
     Hence, the claim does not "relate back" to the original petition.
     [4] In his Traverse, Petitioner alleges that the trial judge "made several unreasonable prejudicial rulings against Petitioner's

26   defense," "denying the majority of the defense objections," and "appeared to be motivated by her relationship to the
     Madera City Police Department."  (Doc. 39, p. 15).  During the course of a trial, a trial judge will frequently overrule

27   defense objections and make evidentiary rulings against the defense, as well as against the prosecution, as a routine and
     normal part of his or her judicial duties.  While this may seem "biased" and "prejudicial" to the accused, it in no way
     proves bias or prejudice.  In sum, Petitioner's *perception* that the judge was prejudiced against him is mere speculation and

28   conjecture, not actual evidence of judicial misconduct.

                                                    9

judge resulting from her husband's former relationship with the Madera Police Force, the Court cannot say that the Appellate Division's adjudication was objectively unreasonable.

**B.   Sufficiency of the Evidence**

Petitioner next argues the evidence was insufficient to support his conviction.[5] The Court disagrees.

**1.   Superior Court Appellate Division's Opinion.**

The Superior Court rejected Petitioner's claims as follows:

> The standard of review of a motion for judgment of acquittal pursuant to Penal Code sec. 1118.1 is set forth by the Supreme Court in People [v.] Stevens (2007) 41 Cal.4th 182, 200:
>
>> …[It] is the same as the standard by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged…The purpose of a motion under section 1118.1 is to weed out as soon as possible those few instances in which the prosecution fails to make even a prima facie case…The question is simply whether the prosecution has presented sufficient evidence to present the matter to the jury for its determination…The sufficiency of the evidence is tested at the point the motion is made…The question is one of law, subject to independent review.  (Internal quotations and citations omitted.)
>
> Here, the Appellant was charged with violating Penal Code sec. 148(a)(1) by willfully resisting, delaying or obstructing Officers Gonzalez and Harlow in the performance of their duties.  In order to make out a case under Section 148(a)(1), the People had to prove that (1) the officers were peace officers lawfully performing or attempting to perform their duties; (2) Appellant willfully resisted, delayed or obstructed the officers in their performance or attempted performance, and, (3) when the Appellant acted, he knew or should have known that the officers were peace officers performing or attempting to perform their duties.  People v. Simons (1996) 42 Cal.4th 1100, 1108-09.
>
> Appellant contends, especially with respect to the First Count involving Officer Gonzalez, that there was not resistance or obstruction to the peace officers because he was never detained, and cites Brendlin v. California (2006) 551 U.S. 249.  According to Appellant, the fact that he was stepping out of the car as officer Gonzalez dismounted from his motorcycle means that he was never detained by Gonzalez.  We do not find Brendlin to be helpful to the Appellant. In fact, Brendlin squarely stands for the proposition that during the initial traffic stop itself, any passengers in the stopped car are seized and, therefore, detained.  See id. at 258 ("A traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver, diverting both from the stream of traffic to the side of the road.")  More importantly for our purposes, the Supreme Court held,

---

[5]  Regarding sufficiency of the evidence, in the first amended petition, Petitioner argues that (1) the trial court erred in denying the motion for judgment of acquittal; (2) the prosecution failed to establish the elements of resisting arrest; and (3) the evidence does not establish that the arresting officer was performing a legal duty when using force on Petitioner.  (Doc. 25). As Respondent contends, all three arguments pertain to the sufficiency of the prosecution's evidence at trial to establish the statutory elements of the crime of resisting arrest.  Accordingly, rather than analyzing each of these claims separately, the Court will address them in the aggregate.

10

…An officer who orders one particular car to pull over acts with an implicit claim of right based on fault of some sort, and a sensible person would not expect a police officer to allow people to come and go freely from the physical focal point of an investigation into faulty behavior or wrongdoing…[E]ven when the wrongdoing is only bad driving, the passenger will expect to be subject to some scrutiny, and his attempt to leave the scene would be so obviously likely to prompt an objection from the officer that no passenger would feel free to leave in the first place (emphasis added). Id. at 257.

Continuing, the Court noted, "It is also reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in a way that could jeopardize his safety." Id. at 258.

Here, Appellant was seized and detained as soon as the traffic stop was initiated. Whether he subjectively believed he was detained or not, a reasonable person would have thought he was not free but was subject to the officer's temporary control. See id. at 258 n. 4. ("In any event, the test is not what [defendant] felt but what a reasonable passenger would have understood.") Therefore, a reasonable person would not have felt "free to leave," and all of Appellant's actions and comments must be taken in the context of Officer Gonzalez attempting to conduct a legal investigation.

As noted above, in reviewing a ruling of the trial court on a motion for judgment of acquittal made pursuant to Section 1118.1, "[the] sufficiency of the evidence is tested at the point the motion is made." People v. Stevens, supra at pg. 200. Taking the evidence as a whole which existed at the time that the motion was made, it appears to us that a reasonable jury could have determined that Appellant's behavior—refusing to follow instructions, yelling and delaying Gonzalez's investigation—would constitute a violation of Penal Code sec. 148(a)(2).

As to Count Two, involving Officer Harlow, the evidence likewise supports the charge. Although Appellant was some distance away from the traffic stop, there is evidence to support the contention that he remained at that distance and did not move when Harlow arrived to continue the investigation. Furthermore, there is evidence that Appellant willingly interfered with Harlow's attempt to carry out his duties as a police officer by refusing to comply with reasonable requests to move out of the street. His refusal to submit to arrest fits the very definition of the crime. Again, taking the evidence as a whole which existed at the time that the motion was made, it appears to us that a reasonable jury could have determined that Appellant's behavior with respect to Officer Harlow would likewise constitute a violation of Penal Code sec. 148(a)(2)[sic].

For all of these reasons, we cannot say that the trial court erred in denying either of the motions for judgment of acquittal as to Count 1 and Count 2 of the complaint.

(LD 3, pp. 3-6).

Subsequently, the Appellate Division modified its opinion to add the following language:

Both in his briefs and his petition for rehearing, the Appellant attacks the sufficiency of the evidence to support the convictions as to Count One and Count Two. As noted in the Opinion, the standard for review of a motion for judgment of acquittal pursuant to Penal Code sec. 1118.1 "…is the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, whether from the evidence, including all reasonable inferences to be drawn therefore, there is any substantial evidence of the existence of each element of the offense charged." People v. Stevens (2007) 41 Cal.4th 182, 200. The Court concluded in the Opinion that there was substantial evidence of the existence of each element of the offense charged as to Count One and Count Two to support the denial of the motion for judgment of acquittal pursuant to Penal Code sec. 1118.1.

11

1    However, the Appellant argues that additional witnesses were called after the motion for
     acquittal, both in the Appellant's case and in the rebuttal case of the prosecution. The additional
2    evidence present after the motion for acquittal does not alter our analysis as stated in the
     Opinion. Upon our review of the entire record, we conclude that there was substantial evidence
3    of the existence of each element of the offense charged as to Count One and Count Two to
     support the conviction.

4

5    (LD 4, p. 2).

6                          2.  Federal Standard.

7         The law on sufficiency of the evidence is clearly established by the United States Supreme

8    Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the

9    test on habeas review to determine whether a factual finding is fairly supported by the record is as

10   follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any

11   rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

12   Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no

13   rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be

14   entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements

15   defined by state law.  Id. at 324, n. 16.

16        A federal court reviewing collaterally a state court conviction does not determine whether it is

17   satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335,

18   338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the

19   light most favorable to the prosecution, any rational trier of fact could have found the essential elements

20   of the crimes beyond a reasonable doubt.'"  See id., quoting Jackson, 443 U.S. at 319.  Only where no

21   rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.

22   See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

23        If confronted by a record that supports conflicting inferences, a federal habeas court "must

24   presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such

25   conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A

26   jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376

27   F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, Jackson does not

28   permit a federal court to revisit credibility determinations.  See id. at 957-958.

                                              12

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson and Winship to the facts of the case. Id. at 1275.[6]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597, 102 S.Ct. 1198 (1981).

Recently, in Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2 (2011), the Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that Jackson

> makes clear that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

---

[6] Prior to Juan H., the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an additional degree of deference to a state court's resolution of sufficiency of the evidence claims. See Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004); Garcia v. Carey, 395 F.3d 1099, 1102 (9th Cir. 2005).

_Cavazos_, 132 S.Ct. at 3.

> "_Jackson_ says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." _Id._, at 326, 99 S.Ct. 2781.

_Cavazos_, 132 S.Ct. at 6. [7]

### 3. _Analysis_.

Regarding the denial of the motion for judgment of acquittal, Respondent correctly argues that this raises only an issue of state law and is therefore not cognizable in these habeas proceedings. No established constitutional right exists to sufficient evidence at the close of the prosecution's case. _See LeMere v. Slaughter_, 458 F.3d 878, 882 (9th Cir. 2006). Thus, regarding the ruling on the motion for judgment of acquittal, Petitioner's argument is reduced to a purported violation of a state law or rule. Generally, issues of state law are not cognizable on federal habeas review. _Estelle v. McGuire_, 502 U.S. 62, 67 (1991)("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), _quoting_ _Lewis v. Jeffers_, 497 U.S. 764, 780 (1990); _Gilmore v. Taylor_, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Accordingly, the Court agrees with Respondent that this aspect of the claim fails to state a cognizable federal habeas claim and should therefore be dismissed.

However, on the merits the claim fails as well. The Appellate Division clearly set forth the elements of the offense. The only issue, therefore, is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." _Jackson_, 443 U.S. at 319. Moreover, the Court must defer to the adjudication of the Appellate Division under the AEDPA and affirm unless the adjudication is "contrary to" or an "unreasonable application" of _Jackson_. In short,

---

[7] To the extent that the Appellate Division's opinion did not expressly cite the _Jackson v. Virginia_ standard in analyzing the sufficiency claims herein, the Court notes that the California Supreme Court long ago adopted the federal _Jackson_ standard for sufficiency claims in state criminal proceedings. _People v. Johnson_, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

unless the state court adjudication is objectively unreasonable, it is entitled to this Court's deference.

The Appellate Division explained the evidence as to both police officers.  As to Gonzalez, it is clear that Petitioner was detained at the time Gonzalez stopped the car in which Petitioner was a passenger.  Hence, Petitioner was subject to the lawful orders and instructions of Gonzalez, which Petitioner disobeyed.  As the Appellate Division noted in its statement of facts, Petitioner repeatedly denied any obligation on his part to submit to Gonzalez's authority and refused Gonzalez's order to sit on the curb.

As to Harlow, Petitioner became "agitated" and took a "fighting stance" while consistently refusing to follow the instructions of either officer.  When Harlow attempted to "control" Petitioner, after Petitioner had taken an aggressive posture with the officer, Petitioner hit Harlow and then refused Harlow's order to get on the ground.  From the foregoing, it is difficult to see how any credible argument could be made that the evidence was insufficient as to the charge of resisting arrest.  Accordingly, the adjudication of the state court was not objectively unreasonable and the claim should be denied.

C.  Exclusion Of Expert Witness Testimony

Finally, Petitioner contends that the trial court violated his right to a fair trial by excluding some testimony from the defense's expert witness, i.e., the witness's opinion regarding the use of force on Petitioner by the arresting officers.  This contention is also without merit.

1.  The State Courts' Decisions.

Petitioner did not present this claim to the Appellate Division.  However, he appears to have presented it to the 5th DCA and the California Supreme Court, both of which summarily rejected the claim without analysis. When a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ––– U.S. ––––, ––––, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013).  Moreover, where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003); Greene v.

1   Lambert, 288 F.3d 1081, 1089 (9th Cir.2002) (holding that when there is an adjudication on the merits

2   but no reason for the decision, the court must review the complete record to determine whether

3   resolution of the case constitutes an unreasonable application of clearly established federal law);

4   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the

5   state court does not supply reasoning for its decision, but an independent review of the record is

6   required to determine whether the state court clearly erred in its application of controlling federal

7   law."). "[A]lthough we independently review the record, we still defer to the state court's ultimate

8   decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). "Independent review of the record

9   is not de novo review of the constitutional issue, but rather, the only method by which we can

10  determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853.

11  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there

12  was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784. Accordingly,

13  in the absence of any reasoned state court decision on this claim, the Court will conduct an independent

14  review.

15          2.  Federal Standard.

16          Generally, the admissibility of evidence is a matter of state law, and is not reviewable in a

17  federal habeas corpus proceeding. Estelle, 502 U.S. at 68; Middleton v. Cupp, 768 F.2d 1083, 1085

18  (1983). Accordingly, incorrect state court evidentiary rulings cannot serve as a basis for habeas relief

19  unless federal constitutional rights are affected. See Whelchel v. Washington, 232 F.3d 1197, 1211 (9th

20  Cir. 2000).

21          To state a claim for habeas relief, a state court's exclusion of evidence must be so prejudicial as

22  to jeopardize petitioner's due process rights. Id. In a habeas proceeding, determining whether the

23  exclusion of evidence in the trial court violated petitioner's due process rights involves a balancing test.

24  See Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985). To evaluate whether the exclusion "reaches

25  constitutional proportions," the court must consider five factors: (1) the probative value of the excluded

26  evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of

27  fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes

28  a major part of the attempted defense. Whelchel, 232 F.3d at 1211. The court must then balance the

importance of the evidence against the state interest in exclusion.  Id.

3.  Analysis

As Respondent notes, no "clearly established" federal law exists regarding the exclusion or admission of state court evidence.  See Brown v. Horell, 644 F.3d 969, 983 (9th Cir. 2011) ("the Supreme Court has not decided any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present a complete defense or 'establishing] a controlling legal standard' for evaluating such exclusions." ) (quoting Moses v. Payne, 555 F.3d 742, 757 (9th Cir. 2009)). This is fatal to Petitioner's claim. He cannot, as was true for the petitioners in Brown and Moses, show that the state court's ruling was either contrary to or an unreasonable application of clearly established Supreme Court precedent since no such clearly established law exists.

Moreover, to the extent that Petitioner is contending that the trial court violated state evidentiary rules regarding expert testimony, Petitioner's claim sounds exclusively in state law, thus precluding habeas review.  However, even assuming the claim is reviewable, the Court's independent review discloses no constitutional violation.

a.    Proceedings at Trial

At trial, in a hearing outside the presence of the jury, the defense offered the proposed expert testimony of Michael Levine, pursuant to Cal. Evid. Code section 402.  (Reporter's Transcript on Appeal, Volume 5 ("RT 5")).  After Levine testified extensively about his qualifications regarding police use of force, the defense proffered the expert on five issues: (1) Petitioner could not have hit Officer Harlow; (2) police used deadly force unnecessarily; (3) Levine believed officers should have used alternative methods in that situation; (4) Petitioner was hit with five baton blows; and (5) pepper spray should have been used instead of a baton.  (RT 5, pp. 1224-1225).  While agreeing that the witness was qualified as an expert, the prosecutor argued that, under Cal. Evid. Code sec. 352, the probative value of Levine's proposed testimony was outweighed by the undue consumption of time and the possibility of confusing jurors about something with which their own common sense and experience could assist them. (RT 5, p. 1225).

The trial judge ruled as follows:

All right.  Mr. Levine, keep in mind, he will not be allowed to testify as to his opinion as to whether or not the force was reasonable or unreasonable.  He will not be able to testify—he will not be allowed to testify to the objective intent of either the defendant or the officers.

But he will be allowed—the court does find that his opinion regarding his view on the video of what the defendant's body was doing does come from background of training and experience that is beyond the common experience of the jury and could assist them in determining the truth in this case.  He will be able to testify as to why he feels the force that was used was deadly force.  And he will be allowed to testify as to the physical evidence on Mr. Clarke's body and how he, Mr. Levine, has interpreted and why he's interpreted it that way.

The availability of less lethal force, I don't see how that's something that the jury can't determine for themselves.  They already know that Officer Harlow had pepper spray available to use.  I think that's something that they can determine.  They don't need an expert to explain that to them.

So in those areas, it will be allowed.

(RT 5, pp. 1226-1227).

Following the ruling, defense counsel asked for clarification that Levine was allowed to testify about the use of a baton as deadly force, which was an indirect comment that the force used was unreasonable, something the judge had prohibited Levine from addressing.  (Id.).  The judge confirmed counsel's understanding, noting, "If I were you, that's what I would say in closing argument."  (Id., p. 1228).  At trial, Levine testified before the jury that the officers' use of batons constituted "deadly force" that resulted in numerous injuries to Petitioner, including five separate baton blows.  (E.g., RT 5, p. 1241).  However, when defense counsel attempted to ask Levine, in contravention of the judge's earlier in camera ruling, whether the officers used "excessive force," the prosecutor objected and the judge sustained the objection on relevancy grounds.  (Id., p. 1245).  On cross-examination, Levine was asked detailed questions about his direct testimony, including the fact that he believed the video contradicted Harlow's testimony that Petitioner hit him.  (Id., p. 1294).

The prosecution then called Robert Blehm, also an expert witness on use of force.  Blehm disputed Levine's testimony regarding the number of wounds on Petitioner's body that could reasonably be attributed to baton strikes, finally opining that only one baton strike had actually caused injury to Petitioner.  (E.g., RT 5, pp. 1320-1322).  Blehm also disputed Levine's characterization of the use of batons as "deadly force," noting that, in the hands of trained officers, use of a baton has no more likelihood of being deadly than simply walking across the street or getting in your car and driving to the market or hitting a baseball with a baseball bat or any of the other daily activities we engage in.

"Certainly it has an ability to cause injury, but not deadly."  (RT 5, p. 1324).  Further, Blehm testified that, after reviewing the video, he concluded that it was "entirely possible" that Petitioner could have struck Officer Harlow.  (Id., p. 1326).  Like Levine, Blehm was subjected to cross-examination by defense counsel.  (Id., pp. 1328 et seq.).

During closing argument, defense counsel argued to the jury that the police, at the behest of Officer Harlow, conspired to make their police reports consistent regarding Petitioner's conduct, that they had no reason to walk over one hundred feet to where Petitioner was located to initiate a confrontation, and that there was no lawful detention.  (RT 6, pp. 1505-1506).  Counsel also discussed the jury instruction on what constituted a reasonable detention, citing Officer Gonzalez's testimony that there was no need for Officer Harlow and another officer to approach Petitioner after he had moved away.  (Id., p. 1507).  The defense argued that, when Petitioner was sent away from the scene it constituted a "break" in the lawful detention that arose when the car was first stopped.  (Id., p. 1508).

Regarding the two experts, defense counsel repeatedly noted that Levine had forty-four years of experience and was "basically James Bond," while Blehm was a friend of the Madera police officers. (RT 6, pp. 1528-1529).   However, defense counsel did not spend significant time recapping the details of Levine's testimony or attacking Blehm's testimony.  On whole, the defense's closing argument focused instead on the inconsistencies in testimony by the various police officers, and he sought to paint a picture of Petitioner as a relatively calm man concerned only for the well-being of his girlfriend, and described a scene that was relatively normal until Officer Harlow arrived and escalated the situation into an arrest.  The jury returned verdicts of guilty regarding resisting arrest in separate counts as to Officers Gonzalez and Harlow; however, the jury found Petitioner not guilty of assaulting officer Harlow.  (RT 7, pp. 1810-1812).

b.    Discussion

As discussed above, the Court, in conducting an independent review, "still defer[s] to the state court's ultimate decisions."  Pirtle, 313 F.3d at 1167.  "[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal citations and quotation marks omitted). However, "the right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other

legitimate interests in the criminal trial process.'" Rock v. Arkansas, 483 U.S. 44, 55 (1987) (quoting

Chambers v. Mississippi, 410 U.S. 284, 295 (1973)). The Constitution permits trial judges "wide

latitude" to exclude evidence that poses an undue risk of confusion or is "only marginally relevant."

Crane, 476 U.S. at 689-90 (1986); Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Exclusion of

testimony is of constitutional magnitude and violates the right to present a defense only when the

excluded testimony is critical to the defendant's ability to defend against the charge. DePetris v.

Kuykendall, 239 F.3d 1057, 1062 (9th Cir.2001).

   For example, in Chambers, 410 U.S. at 300-02, a violation of the right to present a defense was

found when the combined effect of two state evidentiary rules precluded the defendant from cross-

examining the likely culprit and introducing evidence of his confession. Similarly, in Washington v.

Texas, 388 U.S. 14, 19-23 (1967), the defendant's right to present a defense was held to have been

violated by application of a state evidentiary rule that precluded an accomplice from providing

testimony exculpatory to the defendant, even though there was no limit on the accomplice's ability to

testify on behalf of the government.

   By contrast, here, the only limitation placed on Levine's testimony by the trial judge was that he

could not offer an opinion whether the use of force was reasonable or unreasonable, and he could not

testify as to the mental state or intent of the various actors in the incident.  However, beyond those

simple limitations, counsel was permitting to elicit testimony from Levine that officers used deadly

force, that Petitioner was struck five times with a baton, and that other, less deadly methods of control

were available to officers. The trial judge expressly indicated to defense counsel that, although he could

not directly elicit an opinion from Levine that the force used was unreasonable, he could urge that

perspective on the jury in closing argument based on Levine's testimony.  Moreover, both experts were

required to testify within the same parameters and were both extensively cross-examined by opposing

counsel.  In closing argument, both attorneys commented upon the respective credibility of both

experts.  Ultimately, it was for the jury to decide whom to believe, and their acquittal of Petitioner on

the charge of assaulting Officer Harlow indicated that they believed at least some of Levine's testimony

over that of Blehm, demonstrating that they had carefully reviewed the testimony of both experts before

making their findings.  The fact that the same jury found the elements of resisting arrest had been

proven beyond a reasonable doubt in no way impugns the reasonableness of the rather modest

constraints placed by the trial court on the testimony of the experts.  Under all of the circumstances,

such constraints appear to be well within the discretion of the trial judge to control the presentation

order of evidence and to prevent the trial from being burdened by the presentation of evidence that was

either duplicative or only marginally relevant to the key issues in the case.

The primary complaint by Petitioner appears to be that Levine was not allowed to opine that the

use of force was unlawful.[8]  However, as mentioned, he was allowed to testify that the force used was

deadly and caused serious injuries to Petitioner, and, as mentioned, counsel was free to comment upon

Levine's testimony and suggest that it implied that the use of force was unreasonable.  Looking at the

factors the Court must balance in such cases as this, i.e.,  (1) the probative value of the excluded

evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of

fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes

a major part of the attempted defense, the Court concludes that, giving deference to the trial judge's

ultimate decision to exclude certain limited areas from expert witness testimony, the constraints on

Levine's testimony did not rise to the level of a federal constitutional violation.  Whelchel, 232 F.3d at

1211.  Accordingly, Petitioner's claim should be denied.

## **RECOMMENDATION**

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus

(Doc. 1), be DENIED with prejudice.

This Findings and Recommendation is submitted to the United States District Court Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local

Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days**,

any party may file written objections with the Court and serve a copy on all parties.  Such a document

should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the

Objections shall be served and filed within seven days (plus three days if served by mail) after service

of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. §

---

[8] Moreover, allowing such testimony would have usurped the jury's role because the jury was required to determine the lawfulness of the officers' actions when determining Petitioner's guilt. Ca. Pen. Code 148(a)(1).

21

636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

    Dated:   __**February 17, 2016**__          _____**/s/ Jennifer L. Thurston**

                                                UNITED STATES MAGISTRATE JUDGE